# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JEFFERY SUTTON,            Case No. 1:10-cv-937

    Plaintiff,                     Barrett, J.
                                        Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Jeffery Sutton filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

On January 9, 2007, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging a disability onset date of January 2, 2006. (Tr. 11). He was born in 1965 and was 40 years old on his alleged onset date. *Id.* After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge (ALJ). On October 21, 2009, Plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Robert Flynn. (Tr. 24-80). A vocational expert (VE), George Parsons, and Plaintiff's mother, Linda Sutton, also appeared and testified at the hearing.

1

On December 21, 2009, the ALJ entered his decision denying Plaintiff's DIB application. (Tr. 11-20). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since January 2, 2006, the alleged onset date (20 CFR 404.1571 et seq.).

   ……………………..

3. The claimant has the following severe impairments: degenerative disc disease, left elbow contusion, mood disorder, personality disorder, and polysubstance abuse (20 CFR 404.1520(c)).

   ……………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

   ……………………..

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitation: he can sit and/or stand for a total of 6 hours in an 8-hour workday and he can engage in frequent reaching and fine and gross manipulation with his left upper extremity. He can perform simple, routine, repetitive tasks; in a low stress environment defined as free of fast paced production requirements; involving only simple, work-related decisions; and with few, if any work place changes. He cannot perform tandem tasks. The claimant can have occasional interaction with coworkers and supervisors and no interaction with the pubic.

   ……………………..

2

> 6. The claimant is capable of performing past relevant work as an order picker and janitor/cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1564).
>
> ……………………..
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, since January 2, 2006, his alleged onset date (20 CFR 416.920(g)).

(Tr. 13-19).

Thus, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and therefore not entitled to DIB.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) failing to find Plaintiff's subjective complaints to be credible; 2) failing to give controlling weight to the findings of his treating psychiatrist; and 3) failing to make clear the grounds upon which the decision was made. Upon careful review, the undersigned finds that the ALJ's decision is not supported by substantial evidence and this matter should be remanded for further proceedings.

1. *Weight to the treating physician*

Plaintiff's first and third assignments of error both challenge the weight the ALJ assigned to Dr. Lu, Plaintiff's treating psychiatrist, and will be considered together. For the reasons that follow, the undersigned agrees that the ALJ erred in the weighing of Dr. Lu's opinions.

Plaintiff suffers from severe anxiety and nervousness. The record contains treatment notes from Crossroads Center from June 2007 through June 2009. (Tr. 368-406). While at Crossroads, Plaintiff was treated by Sunny Lu, a psychiatrist. Dr. Lu initially diagnosed rule out alcohol abuse, rule out PTSD, anxiety disorder NOS, rule out mood disorder NOS, and assigned Plaintiff a GAF score of 50. She also prescribed

Klonopin and Paxil and recommended counseling for Plaintiff's anxiety. (Tr. 342). In July 2007, Dr. Lu noted Plaintiff's racing thoughts, anxiety attacks and depressed mood. (Tr. 341). Dr. Lu also noted that Plaintiff was experiencing nightmares and flashbacks relating to sexual abuse he suffered as a child. (Tr. 341).

In October 2007, Dr. Lu completed a Medical Functional Capacity Assessment Form, wherein she assessed Plaintiff's ability to function in twenty work-related categories in light of his mental limitations. Specifically, Dr. Lu found that Plaintiff was moderately limited in his ability to: carry out very short and simple instructions; carry out detailed instructions; sustain ordinary routine without special supervision; complete a normal work week without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 369). Dr. Lu also found Plaintiff to be markedly limited in his ability to: work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and travel in unfamiliar places or use public transportation. (Tr. 369). In support of such findings, Dr. Lu noted Plaintiff's intermittent mood swings, social anxiety, distractability and discomfort around crowds. (Tr. 370).

Plaintiff continued to treat with Dr. Lu at Crossroads on a monthly basis throughout 2008. (Tr. 390-402). Plaintiff frequently complained of severe anxiety, racing thoughts and discomfort around people. Dr. Lu prescribed Lithium Carbonate, Seroquel, and Klonopin. In September 2008, Dr. Lu completed a Mental Impairment Questionnaire (RFC & Listings), wherein she listed Plaintiff's diagnoses as mood disorder NOS vs. bipolar disorder NOS; anxiety disorder NOS; and social anxiety NOS.

6

(Tr. 373). Dr. Lu further indicated that Plaintiff's diagnoses resulted in: nervousness, shy[ness], difficulties around people, social anxiety, racing thoughts, hyperactivity, insomnia, and depressed mood. *Id.* Dr. Lu opined that Plaintiff had poor or no ability to " maintain attention for 2 hour segments, maintain regular attendance and be punctual within customary, usually strict tolerances, work in coordination with or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress, understand, remember and carry out detailed instructions. (Tr. 378). Dr. Lu further opined that Plaintiff had marked restrictions in his activities of daily living, social functioning and his ability to maintain concentration, persistence or pace, and also would decompensate continually in a work setting. (Tr. 381-82).

The record further indicates that Plaintiff continued to treat with Dr. Lu and the therapists from Crossroads from January 2009 through August 2009. (Tr. 384-90, 404-06). Plaintiff complained of increased anxiety and insomnia and Dr. Lu continued Plaintiff on Klonopin and Seroquel, but also added Eskalith to Plaintiff's medication regimen.

The ALJ gave "some weight" to the opinions of Dr. Lu and the therapists from Crossroads. (Tr. 17). In so concluding, the ALJ found that Dr. Lu's opinions "were not well supported by medically acceptable clinical findings and laboratory diagnostic techniques, and are inconsistent with other substantial evidence, and based heavily on self-reports." (Tr. 17). The ALJ also determined that "evidence received at the hearing level, including the testimony of the claimant, supports a finding that the claimant is capable of performing work." *Id.* The ALJ's findings in this regard are not substantially supported.

7

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected.*" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security

8

Ruling 96-2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544. The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[] meaningful review of the ALJ's application of the rule." *Id.* Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547.

The ALJ's decision does not reflect an analysis of these factors. As noted above, the ALJ gave only some weight to Dr. Lu's opinions because "they were not well supported by medically acceptable clinical findings and laboratory diagnostic techniques, and are inconsistent with other substantial evidence, and based heavily on self-reports." (Tr. 17). Notably, other than this conclusory statement, the ALJ decision fails to provide any explanation for why he found Dr. Lu's opinions to be unsupported by medically acceptable clinical findings and laboratory diagnostic techniques. Although the ALJ noted that Plaintiff's testimony at the hearing supports a finding that he is capable of performing work, the ALJ did not cite to any specific hearing testimony nor point to any additional specific evidence in the record which undermines Dr. Lu's medical opinions.

Accordingly, the undersigned is unable to engage in meaningful review of the ALJ decision in this regard. *See Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

The ALJ also failed to consider Dr. Lu's longitudinal treatment history of Plaintiff, as well as her objective findings.[1] Notably, Plaintiff treated with Dr. Lu and other therapists at Crossroads for over two years at the time Dr. Lu assessed Plaintiff's mental residual functional capacity. The record contains over thirty pages of treatment notes and clinical findings from Crossroads relating to Plaintiff's mental impairments. These include clinical findings such as anxious or nervous mood, depressed or sad mood, racing thoughts, hyperactivity and insomnia. (Tr. 383-402). Contrary to the ALJ findings, the fact that Dr. Lu's opinions were based on Plaintiff's self-reports does not provide an adequate basis to reject such findings. Notably, the Sixth Circuit Court of Appeals, citing *Poulin v. Bowen*, 817 F.2d 865 (D.C. Cir.1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness.... When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121, (6th Cir.1989). In *Blankenship*, the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made

---

[1] Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). *See* 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. *Blankenship*, 874 F.2d at 1121. Thus, interviews are clearly an acceptable diagnostic technique in the area of mental impairments and Dr. Lu could rely upon the subjective complaints elicited during her treatment sessions with Plaintiff in formulating Plaintiff's functional restrictions. See *Warford v. Astrue*, No. 09-52, WL 3190756, at *6 (E.D .Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments).

Additionally, the ALJ's reliance on Dr. Eggerman's finding is also erroneous. Notably, the ALJ gave "great weight" to the opinion of Dr. Eggerman, who examined Plaintiff in February 2007 at the request of the state agency. (Tr. 287-94) ). Dr. Eggerman diagnosed mood disorder and personality disorder and opined that Plaintiff had no limitation in his ability to understand, remember and carry out short and simple instructions, as well as mild limitations in his ability to understand, remember and carry out detailed instructions. (Tr. 292). He further opined that Plaintiff had mild limitations in his ability to make work-related judgements, and mild-to-moderate limitations in his ability to interact with others. (Tr. 292). Dr. Eggerman further indicated that Plaintiff had mild limitations in his ability to respond to changes in the work setting and moderate limitations in his ability to respond to work pressures. (Tr. 292).

The ALJ determined that Dr. Eggerman's findings were "well supported by medically acceptable clinical findings and laboratory diagnostic techniques. Further, Dr. Eggerman is a specialist, and his opinion is within his speciality." (Tr. 17). As with Dr. Lu's opinions, the undersigned cannot engage in meaningful review of the ALJ's decision with respect to Dr. Eggerman because the ALJ failed to identify any objective

evidence in support of Dr. Eggerman's findings or the basis for his conclusion in this regard. Furthermore, it is clearly established law that the opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years. *See Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). As detailed above, Dr. Lu treated Plaintiff for over two years and her findings were properly supported.

Accordingly, the undersigned finds that the ALJ improperly weighed the medical evidence. As detailed above, the ALJ failed to consider the length of treatment and supportability of Dr. Lu's opinions and his reliance on Dr. Eggerman's assessment was also unreasonable. This matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law.

*2.     Plaintiff's credibility*

Plaintiff further argues that the ALJ erred in evaluating his pain and credibility in accordance with Social Security Ruling 96-7p. SSR 96-7p provides in part:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

Here, Plaintiff testified that he stopped working due to his anxiety and extreme nervousness in public. Plaintiff testified that he was molested by an older boy from his school from the age of 8 through 13. The boy then spread rumors about the abuse at school and Plaintiff was "known as the fag of the school" and "couldn't go into the restroom at school without being teased or tormented." (Tr. 32). Plaintiff did not tell anyone about the abuse until he was around 37 years old. (Tr. 31). Plaintiff testified that he suffers from panic attacks when out in the public and is unable to go into a public restroom. (Tr. 31). Thus, he avoids leaving his home. He sees a psychiatrist and a psychologist twice a month and takes Lithium, Klonopin and Seroquel to treat his anxiety. (Tr. 33). With respect to drug use, Plaintiff denied using drugs other than marijuana, however he later admitted that he had used cocaine. (Tr. 45, 47). He also said that he had last used drugs in 2006. (Tr. 45).

The ALJ found that Plaintiff's subjective complaints of pain and limitations were undermined by several inconsistencies in the record. Notably, the ALJ cited to Plaintiff's inconsistent versions of his alcohol and drug abuse. The ALJ also noted that Plaintiff testified that he self-isolates, has few friends and infrequently leaves his house. (Tr. 17). However, in March 2005 and August 2008, Plaintiff was injured in an incident of street crime, thus, the ALJ concluded that the evidence of record suggests that Plaintiff gets out of the house more than he admits. The ALJ's credibility determination cannot be affirmed as it stands.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96-7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002). Aside from Plaintiff's inconsistent statements relating to drug use and two isolated crime-related incidents, the ALJ did not identify any evidence in the record that contradicted Plaintiff's testimony or supported his finding that his subjective complaints of severe anxiety were not credible. Notably, although the ALJ discounted Plaintiff's testimony due to his inconsistent statements relating to drug use, the ALJ also found that Plaintiff's "impairments would remain whether or not he ever used drugs or alcohol again." (Tr. 14). Moreover, as detailed above, Plaintiff's complaints of severe anxiety are supported by the objective findings of Dr. Lu, which the ALJ failed to properly consider.

In light of the foregoing, the Court cannot perform a meaningful review of the ALJ's determination that Plaintiff's subjective complaints were not credible because the ALJ failed to evaluate Plaintiff's credibility in accordance with SSR 96-7p. Accordingly,

14

remand is also necessary for the ALJ to properly assess the credibility of Plaintiff's subjective complaints of pain and provide reasons for his credibility determination that are sufficiently specific to make clear the weight he gave Plaintiff's statements and the reasons for that weight.

## III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2. On remand, the ALJ be instructed to: 1) properly assess and evaluate the opinion evidence; and 2) properly consider Plaintiff's credibility and

subjective complaints, and provide a clear explanation for the conclusions reached therein.

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                                   *s/Stephanie K. Bowman*
                                                   Stephanie K. Bowman
                                                   United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JEFFERY SUTTON,　　　　　　　　　　　　　　　Case No. 1:10-cv-937

　　　　Plaintiff,　　　　　　　　　　　　　　　　Barrett, J.
　　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.
　　v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

　　　　Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).